UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>$1,152,366.18 IN FUNDS FROM BENDURA BANK AG, PORTFOLIO NUMBER XX5.280, HELD IN THE NAME OF GOLDEN CASTLE TECHNOLOGY LIMITED; $53,020.18 IN FUNDS FROM BENDURA BANK AG. PORTFOLIO NUMBER XX3.200, HELD IN THE NAME OF YOUNES NASRI,<br><br>         Defendants. | Case No.: 21-cv-1134-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion to Strike (ECF No. 36) filed by Plaintiff United States of America.

///

///

## I. PROCEDURAL BACKGROUND

On June 21, 2021, the United States initiated this civil action by filing a Complaint seeking civil forfeiture of Defendant Funds held in two Liechtenstein accounts pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881. (ECF No. 1).

On August 10, 2021, Younes Nasri ("Claimant") filed a Claim to Defendant Funds, stating that Defendant Funds "belong to [Claimant]" and "are the proceeds of [Claimant's] legitimate employment." (ECF No. 11). The docket reflects that no other claims to Defendant Funds have been filed.

On August 11, 2021, the United States filed an Amended Complaint. (ECF No. 12). On December 3, 2021, the United States filed a Second Amended Complaint ("SAC"). (ECF No. 23). On February 3, 2022, Claimant filed an Answer to the SAC seeking the return of Defendant Funds to Claimant. (ECF No. 26).

On April 8, 2022, the United States filed the Motion to Strike, which requests that the Court strike Claimant's Claim and Answer pursuant to the fugitive disentitlement statute, 28 U.S.C. § 2466. (ECF No. 36). On May 2, 2022, Claimant filed a Response in opposition to the Motion to Strike. (ECF No. 40). On May 9, 2022, the United States filed a Reply. (ECF No. 41).

## II. CONTENTIONS

The United States contends that "[Claimant's] [C]laim should be stricken as he should be disallowed from using the Court's resources to litigate this civil forfeiture case ... while also refusing to participate in his pending criminal case." (ECF No. 36 at 14). The United States contends that the "totality of the circumstances" demonstrates that Claimant has deliberately avoided prosecution by declining to enter the country. (*Id.* at 21). The United States contends that "[a] determination of fugitive disentitlement is a threshold issue and where found, prohibits [Claimant] from challenging the forfeiture on any grounds." (*Id.* at 5). The United States contends that Claimant's due process rights have not been violated because Claimant "has the opportunity to be heard on his [Claim] simply by coming to the United States and submitting to the criminal jurisdiction of the Court." (ECF

No. 41 at 6). The United States contends that the Court has in rem jurisdiction over this action.

Claimant contends that "notice of the indictment and this forfeiture proceeding" is "insufficient evidence to establish a specific intent to decline to enter this country for the first time for the express purpose of avoiding prosecution." (ECF No. 40 at 9). Claimant contends that the fugitive disentitlement statute "violates Due Process because it deprives the Claimant of his right to be heard." (*Id.* at 8). Claimant contends that "[t]his Court lacks *in rem* jurisdiction over the frozen assets because [28 U.S.C. § 1355(b)(2)] does not confer jurisdiction and neither the assets nor [ ] Claimant have even minimal contacts with this district." (*Id.* at 7). Claimant contends that the Court should exercise its discretion to decline to strike the Claim due to the due process and jurisdictional issues in this case.

## III.  STANDARD OF REVIEW

A motion to strike is an appropriate procedural vehicle to enforce the fugitive disentitlement statute. *See United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051, 1058-59 (9th Cir. 2013) (affirming the district court's decision to not convert a motion to strike pursuant to 28 U.S.C. § 2466 to a motion for summary judgment). A motion to strike pursuant to § 2466 is treated "as something like a motion to dismiss, where [the Court] can look to matters outside the pleadings and ..., where appropriate, allow for the possibility of conversion to summary judgment." *Id.* at 1055 (alterations omitted) (quoting *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 38 (D.D.C. 2007)); *see also $6,976,934.65 Plus Interest*, 478 F. Supp. 2d at 38 (stating that "[i]t is especially appropriate for a court to look at matters outside the pleadings when fugitive disentitlement is at issue" because the analysis "resembles a court's inquiry into its subject matter jurisdiction" and "a court should consider as much information as is available before deciding whether to invoke the significant measure of disallowing a claim").

///
///
///

## IV. DISCUSSION

The fugitive disentitlement statute provides:

(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action ... upon a finding that such person—
> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—
>> (A) purposely leaves the jurisdiction of the United States;
>> (B) declines to enter or reenter the United States to submit to its jurisdiction; or
>> (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
> (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466(a). The statute "is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *$671,160.00 in U.S. Currency*, 730 F.3d at 1058 (quotation omitted). A court is required to find five elements in order to strike a claim under 28 U.S.C. § 2466:

> (1) [A] warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant or process; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided criminal prosecution by leaving the United States, declining to enter or reenter the country, or otherwise evading the criminal court's jurisdiction.

*United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 886 (9th Cir. 2009).[1]

---

[1] The Court declines to convert the Motion to Strike to a motion for summary judgment or otherwise apply a summary judgment standard of review because there is no void in the record or material contradictory evidence. *See $671,160.00 in U.S. Currency*, 730 F.3d at 1059 (holding that a district court may strike a claim without converting the government's motion to strike into one for summary judgment if summary judgment is not warranted to "fill a void in the record" or to "reconcile contradictory information contained in .... declarations or other admissible evidence."). Under the summary judgment standard, the Court

The United States presents evidence that on March 15, 2018, a warrant for Claimant's arrest was issued in *United States v. Ramos*, No. 18-cr-1404-WQH.[2] The United States presents evidence that Claimant retained counsel to represent him in *Ramos* no later than March 30, 2018. (*See* ECF No. 36-4 at 11 (letter from Claimant's counsel that states "I have been retained by Younes Nasri to represent him in *United States v. Ramos*")). Claimant does not contend or present evidence that a warrant has not been issued, that Claimant did not have notice of the warrant, or that Claimant is confined or held in custody in another jurisdiction. The Court finds that (1) a warrant has been issued in *Ramos* for Claimant's apprehension; (2) Claimant had notice or knowledge of the warrant or process; and (3) Claimant is not confined or otherwise held in custody in another jurisdiction.

The indictment in *Ramos* charges Claimant with violations of 18 U.S.C. § 1962(d) (racketeering conspiracy)—based on acts indictable under 21 U.S.C. §§ 841, 846, 952, 960, 963, and 18 U.S.C. § 1512(c) (drug trafficking, import, conspiracy, and obstruction of justice)—and 21 U.S.C. §§ 841(1)(1) and 846 (conspiracy to aid and abet the distribution of cocaine). (*See Ramos*, No. 18-cr-1404-WQH, ECF No. 1 ¶¶ 19-21). The indictment alleges that Claimant was a participant in a criminal enterprise, "PHANTOM SECURE," that "sold encryption services and devices to transnational criminal organizations to facilitate illegal activity." (*Id.* ¶ 2). The indictment alleges that an objective of PHANTOM SECURE was to engage in money laundering. (*Id.* ¶ 17). The indictment contains a criminal forfeiture allegation seeking forfeiture of property and interests of the criminal defendants, including Claimant. (*See id.* ¶¶ 22-26). One of the indicted co-conspirators, Vincent Ramos, stated in a plea agreement that Claimant participated in the criminal enterprise and that the enterprise involved the laundering of illegal proceeds. (*See Ramos*,

---

would reach the same outcome in this case because each of the five disentitlement elements is adequately supported by uncontroverted evidence.

[2] The unopposed request of the United States for judicial notice of filings in *Ramos* is granted. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

No. 18-cr-1404-WQH, ECF No. 43 ¶ 13). Ramos further agreed to the forfeiture of illegal proceeds, including funds in two Allied Irish Bank accounts. (*See Ramos*, No. 18-cr-1404-WQH, ECF No. 43-1 at 10).

The SAC in this case alleges a forfeiture claim under 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881 for violations of the same statutes that form the basis for the racketeering conspiracy charged in *Ramos*. The SAC alleges that Claimant participated in the operation and management of PHANTOM SECURE. (ECF No. 23 ¶ 25). The SAC alleges that Claimant formed "shell companies," SecureComm Ltd., DSL Data Service Logistics Limited, Encryptcomm Ltd., and Golden Castle Technology Ltd., to launder PHANTOM SECURE's "criminal proceeds."[3] (*Id.* ¶ 93). The SAC alleges that Claimant opened the Bendura Bank accounts held in his name and in the name of Golden Castle Technology Ltd. that contain Defendant Funds. (*Id.* ¶¶ 100-101). The SAC alleges that each of the Bendura Bank accounts "received" millions of dollars in criminal proceeds from bank accounts controlled by SecureComm Ltd., DSL Data Service Logistics Limited, Encryptcomm Ltd. (*Id.* ¶¶ 112, 119). The SAC alleges that transfers from the Bendura Bank accounts into the Allied Irish Bank accounts forfeited by Vincent Ramos in *Ramos* comprised over 91% of total deposits into both Allied Irish Bank accounts. (*See id.* ¶¶ 127, 138). The parties have sought four stays of this action based on the criminal prosecution in *Ramos* (*see* ECF Nos. 14, 17, 20, 24), and Claimant does not contend or present evidence that the cases are unrelated. The Court finds that *United States v. Ramos*, No. 18-cr-1404-WQH, is related to this action.

The parties dispute the fifth element of the fugitive disentitlement statute—whether Claimant "deliberately avoided criminal prosecution by ... declining to enter ... the country,

---

[3] The SAC is verified by FBI Special Agent Brett Kalima. (*See* ECF No. 23-1). As a result, the Court considers as evidence the allegations contained in the SAC to the extent they are based on Kalima's personal knowledge and set forth specific admissible facts. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (considering allegations in a verified complaint on a motion for summary judgment); *Brooke v. Kahl Corp.*, 362 F. Supp. 3d 864, 873 (S.D. Cal. 2019) (considering allegations in a verified complaint in a motion to dismiss for lack of subject matter jurisdiction raising a factual challenge).

or otherwise evading the criminal court's jurisdiction." *$6,190.00 in U.S. Currency*, 581 F.3d at 886. This element is satisfied if the claimant makes a "conscious choice" to not enter the United States in order to avoid criminal prosecution. *$671,160.00 in U.S. Currency*, 730 F.3d at 1056. While "mere notice and refusal" to enter the United States is insufficient, a "desire to evade criminal prosecution need not be the sole motivating factor causing [a claimant] to remain abroad, to the exclusion of all others." *Id.* at 1056 n.2, 1057; *see also United States v. Batato*, 833 F.3d 413, 430 (4th Cir. 2016) ("Because the statute must apply to people with no reason to come to the United States other than to face charges, a 'sole' or 'principal' purpose test cannot stand. The principal reason such a person remains outside the United States will typically be that they live elsewhere. A criminal indictment gives such a person a reason to make the journey, and the statute is aimed at those who resist nevertheless.").

The United States presents evidence that Claimant has knowingly remained outside the United States in an unknown location despite Claimant's counsel's assertion in 2018 that Claimant "looks forward to vindicating himself in short order." (ECF No. 36-4 at 11). The United States presents evidence that Claimant "attempted to purchase a fraudulent passport" and was "<u>moving from city to city and staying in low-budget hotels to avoid capture</u>." (ECF No. 36-1 at 9-10). The docket reflects that Claimant previously sought a stay of proceedings in this action "in the interest of a possible global resolution of this case and the related criminal case." (ECF No. 24 at 1). Claimant's counsel has previously represented to the Court that Claimant "will not be able to appear before this Court" because Claimant is "exercising his Fifth Amendment right against self incrimination." (ECF No. 38 at 3).

The totality of the evidence demonstrates that Claimant has made a conscious choice to not enter the United States motivated, at least in part, by a desire to avoid criminal prosecution. Claimant has offered no evidence of any contrary motive for remaining outside the United States. Accordingly, the Court finds that Claimant deliberately avoided criminal prosecution by declining to enter the country. *See $671,160.00 in U.S. Currency*,

730 F.3d at 1057 (holding that an assertion of "Fourth, Fourteenth, and Fifth Amendment rights[] was evidence of [the claimant's] intent to avoid criminal prosecution and to selectively use the courts to his own favor"); *see also United States v. Technodyne LLC*, 753 F.3d 368, 386 (2d Cir. 2014) (holding that evidence that a claimant attempted to negotiate his return to the country "as a hallmark indicator" that the claimant was declining to return in order to avoid prosecution).

While all the elements of 28 U.S.C. § 2466 have been satisfied, "[§ 2466] does not mandate disentitlement." *$6,190.00 in U.S. Currency*, 581 F.3d at 886. *"*[T]he ultimate decision whether to order disentitlement in a particular case rests in the sound discretion of the district court." *Id.* (quotation omitted). Claimant contends that the Court should exercise its discretion to not grant disentitlement because the fugitive disentitlement statute violates his due process rights and the Court lacks in rem jurisdiction.

The Due Process Clause of the Fifth Amendment establishes "the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). The fugitive disentitlement statute imposes a presumption that persons who refuse to enter the country to face criminal charges under certain circumstances do not have meritorious claims to assets subject to forfeiture. However, this presumption can be nullified by a claimant electing to enter the United States. A claimant is further afforded the opportunity to dispute the propriety of granting disentitlement (as Claimant has in this case), and the reviewing court may exercise its discretion to not grant disentitlement even where all the statutory requirements have been satisfied. The Court concludes that the fugitive disentitlement statute does not violate the Due Process Clause. *See $671,160.00 in U.S. Currency*, 730 F.3d at 1057 n.3 ("Actual knowledge that criminal charges are pending, and a refusal to return to the United States in order to avoid answering to those charges, will suffice for due process purposes."); *Batato*, 833 F.3d at 429 ("As § 2466 predicates disentitlement on an allowable presumption that a criminal fugitive lacks a meritorious defense to a related civil forfeiture, we find it does not violate the Due Process Clause of

the Fifth Amendment and affirm the district court's decision."); *Collazos v. United States*, 368 F.3d 190, 204 (2d Cir. 2004) ("[W]e conclude that when persons knowingly refuse to produce themselves in the United States to answer criminal charges, Congress acts within its power and does not violate due process by authorizing courts to disallow their challenges in related civil forfeiture proceedings.").

"A forfeiture action is *in rem*." *United States v. Ten Thousand Dollars ($10,000.00) in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir. 1988). "Jurisdiction *in rem* is predicated on the 'fiction of convenience' that an item of property is a person against whom suits can be filed and judgments entered." *Id.*

28 U.S.C. § 1355(b) provides:

> (1) A forfeiture action or proceeding may be brought in—
>     (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or
>     (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
> (2) Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District court for the District of Columbia.

28 U.S.C. § 1355(b). Section 1355(b) "unif[ies] the treatment of jurisdiction, venue and authority to serve process," *United States v. One Piper Cherokee Aircraft*, 91 F.3d 1204, 1207 (9th Cir. 1996), and "does not require the government to establish constructive control of the proceeds to sustain jurisdiction," *United States v. Approximately $1.67 Million (US) in Cash, Stock, and Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008). 21 U.S.C. § 881 further provides:

> In addition to the venue provided for in section 1395 of Title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

21 U.S.C. § 881(j).

The SAC alleges that Defendant Funds are "subject to forfeiture under [21 U.S.C. § 881(a)(6)]." (ECF No. 23 ¶¶ 146, 150). The Court has determined that Claimant is charged in *Ramos* with criminal violations that form the basis for the § 881 forfeiture claim in this action. The criminal prosecution in *Ramos* was brought in this judicial district. As a result, the Court has jurisdiction over this action pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1355(b). *See One Piper Cherokee Aircraft*, 91 F.3d at 1207 (stating that a district court has jurisdiction under § 1355(b)(1)(B) "because venue for the proceeding in the [district] is provided for in 21 U.S.C. § 881(j)"); *see also United States v. Obaid*, 971 F.3d 1095, 1098-1105 (9th Cir. 2020) (explaining that § 1355(b) creates a "legal fiction" that the property at issue is located within the jurisdictional boundaries of the district sufficient to support in rem jurisdiction, and that the personal jurisdiction minimum contacts analysis is inapplicable to pure in rem actions).

The fugitive disentitlement statute "is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *$671,160.00 in U.S. Currency*, 730 F.3d at 1058 (quotation omitted). In this case, Claimant, "facing both incarceration and forfeiture for his [alleged] misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Id.* (quotation omitted). Further, the Court is satisfied that the due process and jurisdictional requirements have been satisfied. The Court concludes that Claimant is disallowed from using the resources of this Court in furtherance of his Claim to Defendant Funds in this civil forfeiture action. The Motion to Strike is granted.

///
///
///
///

## V. CONCLUSION

The Motion to Strike filed by Plaintiff United States of America (ECF No. 36) is granted. Claimant Younes Nasri's Claim (ECF No. 11) and Answer (ECF No. 26) are stricken from the record.

Dated: June 30, 2022

Hon. William Q. Hayes
United States District Court